Argued and submitted April 5, reversed September 25, 1984

STATE OF OREGON,
*Respondent on Review,*

*v.*

LEROY JAMES PERRY,
*Petitioner on Review.*

(TC J82-2628; CA A26974; SC S30381)

688 P2d 827

Philip M. Suarez, Assistant Public Defender, Roseburg, argued the cause and filed the petition for Petitioner on Review.

Kay Kiner James, Assistant Attorney General, Salem, argued the cause and filed the brief for Respondent on Review. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Deputy Solicitor General, Salem.

CAMPBELL, J.

## CAMPBELL, J.

We allowed review in this case to consider the propriety of an "inventory search" by police of luggage belonging to a person temporarily detained for detoxification. We hold that under the circumstances presented by this case, the search was not proper and reverse the Court of Appeals and the trial court.

Shortly after noon on November 13, 1982, the Roseburg police received a call reporting an intoxicated person in front of the bus station. A police officer went to the bus station and saw defendant staggering. The police officer saw that when defendant reached the edge of the sidewalk of a main street and attempted to step down, he fell face forward. When the officer helped defendant up he noticed a strong odor of alcohol. Defendant was unable to speak clearly. The officer decided to take him to the police station for detoxification pursuant to ORS 426.460.[1] Defendant had two suitcases with him, which the officer put in the trunk of the police car.

After they reached the police station the officer got "booking information," evidently defendant's name and address. The officer then took defendant's shoes and belt and laid him on a mattress on the floor in the "detox" area and shut the door.

---

[1] ORS 426.460 (1), (2) and (3) state:

"(1) Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility. A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance.

"(2) The director of the treatment facility shall determine whether a person shall be admitted as a patient, or referred to another treatment facility or denied referral or admission. If the person is incapacitated or the health of the person appears to be in immediate danger, or if the director has reasonable cause to believe the person is dangerous to self or to any other person, the person must be admitted. The person shall be discharged within 48 hours unless the person has applied for voluntary admission to the treatment facility.

"(3) In the absence of any appropriate treatment facility, an intoxicated person or a person under the influence of controlled substances who would otherwise be taken by the police to a treatment facility may be taken to the city or county jail where the person may be held until no longer intoxicated, under the influence of controlled substances or incapacitated."

The officer then went back to his car, got the two unlocked suitcases and put them in the booking room. He opened the large suitcase, or "steamer trunk," in order to do an "inventory search." Near the top of the trunk was a clear plastic sack containing a green, leafy substance which the officer believed to be marijuana. The officer seized the plastic bag and its contents as evidence.

Defendant was charged with possession of a controlled substance. He moved to suppress the evidence, relying on Article I, section 9 of the Oregon Constitution and the Fourth Amendment of the federal constitution. After the trial court denied his motion, it found him guilty of the crime. The Court of Appeals, 66 Or App 318, 674 P2d 1176 (1984), affirmed, Warden J., dissenting.

It is important to be precise about the exact situation that this case presents. It concerns the propriety of police opening for inventory purposes luggage belonging to a person who is being held solely for detoxification. This is a noncriminal, nonemergency situation. The defendant does not argue that the police acted improperly when they took him to the police station for detoxification or that they acted improperly when they took custody of his suitcases.[2] The state does not claim the police had probable cause or reasonable suspicion that defendant had committed a crime. Defendant was not arrested and there is no evidence that he could have been arrested. The police lacked probable cause or reasonable suspicion that the suitcases contained evidence of a crime, contraband or weapons. The officer offered only one reason for opening the suitcases: "I unlatched the steamer trunk for an inventory search so I could see if there was any valuables in the suitcase, money, so later on [defendant] wouldn't be advising us that we had taken money from him." The officer testified that valuable property is generally put in a large envelope and locked in a safe pursuant to Roseburg City Police policy, but the safe was not large enough for a suitcase. The officer testified that the booking area is "the only place we have to leave items that large." He also testified that sometimes persons not connected with the police department are left alone in the booking area.

---

[2] Indeed, one might argue that it would have been improper for the officer to fail to take custody of the luggage in this situation.

The state argues that there are other justifications for the search which were not stated by the officer but which are still valid. It contends a search in this situation will protect defendant's property from people who might have been left alone in the booking area and will maintain the security of the detention facility.[3]

This court first considered the subject of "inventory searches" in *State v. Keller,* 265 Or 622, 510 P2d 568 (1973). The police arrested the defendant for operating an automobile while her driver's license was suspended. After the defendant was placed in the police car, the officers called a tow truck to remove the defendant's vehicle from the street. Administrative procedure required that the police inventory the defendant's vehicle and "note the type of motor and transmission, tires, valuables, body damage, color of car, and weapons." During the inventory the officers saw a fishing tackle box on the floor of the back seat. A red wire was tied around it to hold it shut. When the police removed the wire and opened the box to inventory its contents, they discovered dangerous drugs.

Keller was indicted for possession of dangerous drugs[4] and filed a motion to suppress. The trial court allowed the motion as to the drugs found in the fishing tackle box. The state appealed under ORS 138.060 and the Court of Appeals reversed. 9 Or App 613, 497 P2d 868 (1972). This court accepted review and in turn reversed the Court of Appeals and affirmed the trial court.

We concluded that the police actions were unreasonable under both the state and federal constitutions because they could have "easily inventoried 'one fishing tackle box,' along with other items in plain view." In reaching that conclusion we examined *Mozetti v. Superior Court of Sacramento County,* 4 Cal 3d 699, 94 Cal Rptr 412, 484 P2d 84

---

[3] The state argues: "An incoming prisoner who has already been searched could simply hide items taken from defendant's luggage on his person and thus introduce those items into the jail. An individual who has not been searched could take items from defendant's luggage, hide them on his person, and have the police inventory them as his own property and thereby insure the security of those items, not for the rightful owner, but for the thief. Finally, an incoming prisoner could hide weapons or contraband he had on his person in defendant's luggage."

[4] The indictment also included other drugs which were found in plain view in an open cosmetic case.

(1971), and *State v. Gwinn,* 301 A2d 291 (Del 1972). In *Mozetti,* the court suppressed marijuana which had been discovered in a closed suitcase in a car that was being inventoried under standard police procedure prior to having it towed from the scene of a two-car collision. In *State v. Gwinn, supra,* the Delaware court suppressed marijuana which was seized from a closed satchel in an automobile inventoried under controlling police regulations prior to calling a tow truck to impound the vehicle as a result of the driver's arrest for driving under the influence.

*State v. Keller, supra,* has been cited with approval. *See State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984), where we hold that a properly administered noninvestigative automobile inventory is permissible under Article I, section 9 of the Oregon Constitution and the Fourth Amendment. *See also State v. Downes,* 285 Or 369, 591 P2d 1352 (1979).

*State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982), is our only previous case examining a search following the police taking custody of a person on a "civil hold" for detoxification. We held that the search of a person's purse for identification before transportation to a treatment center was not reasonable. We in effect held that the conduct of police in dealing with persons in noncriminal and nonemergency situations is to be tested by "reasonableness."

We agree with the reasoning and the result in *State v. Lawrence,* 58 Or App 423, 648 P2d 1332 (1982), where the issue was the same as the issue in this case. That court stated the issue:

> "* * * whether the police may, without a warrant, in a noncriminal, nonemergency situation open a closed container seized from the intoxicated person at the time he is booked in at the holding facility. * * *." Id at 425-26.

We did not reach this issue in *State v. Newman, supra.*

The defendant, Lawrence, was first observed in a restaurant in Springfield in a highly intoxicated condition. The police were called and he was taken into custody. A room was requested for the defendant at Buckley House, an alcoholic treatment facility but the facility was full and would not admit him. The department policy was not to take intoxicated

people home so, the defendant was transported to the county jail. At the jail the defendant was put through the booking process. The booking officer testified that the booking procedure was the same for a person in civil custody as for one charged with a crime. During the process, a clear plastic box containing a two and one-half inch white plastic drinking straw was found in the defendant's jacket. An officer removed the grey tape closing each end of the straw and found numerous small pink tablets. A laboratory analysis determined that the tablets contained lysergic acid die-thylamide, a controlled substance.

The trial court denied the defendant's motion to suppress and found him guilty of the possession of a controlled substance after a trial without a jury. The Court of Appeals reversed the conviction for the following reasons:

"Given the fact that the purpose of ORS 426.460 is to protect intoxicated persons by keeping them in custody for a limited period (48 hours), rather than treating them as criminals, it would be anomalous to treat them the same as one in full custody arrest for a criminal offense. What is reasonable in the latter case may not be in the former. * * * It is * * * reasonable for the booking officer to inventory [see ORS 133.455] the property of the intoxicated person when he will be held in jail, even though not booked for a crime, in order to protect his property and to maintain the security of the detention facility.

"However, the inventory process in noncriminal, non-emergency cases should be less intrusive than that considered reasonable in criminal cases. Once a closed container is taken from the person during inventory of his property and is in the exclusive control of the police, it is unreasonable to open the container and seize its contents without a warrant unless the contents are in plain view and are identified as contraband without the necessity of laboratory analysis." 58 Or App 430-431 (1982). (Footnote omitted.)

We agree. We think that the reasons and result reached in *State v. Lawrence, supra,* are consistent with *State v. Atkinson, supra, State v. Newman, supra,* and *State v. Keller, supra.*

First, assume the defendant in this case was arrested for driving with a suspended operator's license a 1929 Stutz Bearcat and sitting on the seat beside him were all of his

worldly possessions contained in two fishing tackle boxes — one large and one small, but both secured by red ribbons. Defendant, car, and tackle boxes were taken to the police station. Then, change the facts and assume that the same defendant was taken into custody on a civil hold for being intoxicated as a passenger in the same vehicle and the officers take him and his two fishing tackle boxes to the jail.

Under both assumptions, an inventory could be carried out under the same administrative procedure. In the situation where the defendant was arrested for driving with a suspended operator's license, an alleged criminal act has triggered the impoundment and inventory of his property. Under *State v. Keller, supra,* the police could not open and inventory the contents of the containers. However, the State now argues that when the defendant ends up in jail as a result of his intoxication or his being under the influence of a controlled substance, which is not a criminal act, that the booking officer may open and inventory closed containers as a part of the jail's administrative procedure. We fail to see a distinction in the two situations which would persuade us to overrule *State v. Keller, supra.*

██ As Judge Buttler points out in *State v. Lawrence, supra,* the inventory process in a noncriminal, nonemergency case should be less intrusive than what may be considered reasonable in a criminal case. In other words, a person is entitled to a greater expectation of privacy in a civil hold situation than he is in a criminal case. Here we need not decide the difference in the degree because this defendant is expecting only the same treatment as the defendant who was charged with a crime, in *State v. Keller, supra.* In this case, if we were to hold that the defendant's suitcases could have been opened and the contents inventoried, we would have given the defendant less protection under the law than the defendant received in *State v. Keller, supra.*

Reversed.