Argued and submitted January 6, decision of the Court of Appeals reversed; judgment of the circuit court vacated, and case remanded to the circuit court for further proceedings September 9, 1994

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## CHRIS EDGAR HOSKINSON,
*Petitioner on Review.*

(CC 9106-1185; CA A73746; SC S40729)

879 P2d 180

Dan Maloney, Deputy Public Defender, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition was Sally L. Avera, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause and filed the response for respondent on review. With him on the response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

FADELEY, J.

Van Hoomissen, J., concurred and filed an opinion.

**FADELEY, J.**

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He seeks suppression of evidence of a controlled substance obtained by police who conducted a warrantless search of his wallet incident to a lawful arrest. At issue is the validity of that search under Article I, section 9, of the Oregon Constitution.[1] The trial court denied defendant's motion to suppress the evidence found in his wallet. The Court of Appeals affirmed. *State v. Hoskinson*, 123 Or App 305, 859 P2d 576 (1993). We reverse.

A police officer saw defendant driving his car. The officer knew that defendant's driver license was suspended and confirmed that fact by radio. After arresting defendant for driving while suspended, the officer handcuffed defendant and then conducted a "pat-down search" of defendant's person. During the pat-down, the officer took a wallet from defendant's back pocket. The officer opened and looked inside the wallet, discovering a small plastic bag containing powder residue that later tests confirmed was methamphetamine.

Defendant moved to suppress the evidence found in his wallet. During the suppression hearing, the officer testified on direct examination:

"[State:] All right. Did you have any indication from looking at [the wallet] before you opened it up that it may contain a weapon or a means of escape?

"[Officer:] I could not tell that by not opening it up."

On cross-examination, the officer testified:

"[Defendant's lawyer:] Could you explain to us why — what you were concerned about with your safety? You've got the wallet. How can you be in danger?

"[Officer:] I've — it's normal practice for myself to obtain the wallet and see if there are any weapons or any indications of things that would be used to escape that would alert myself to search the subject more thoroughly and extensively for additional means of escape."

---

[1] Article I, section 9, of the Oregon Constitution, provides in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

The trial court found that the officer was "searching for weapons and means of escape" and concluded that the search was a valid search at the time and place of arrest. The Court of Appeals affirmed.

Defendant argues that the search of his wallet violated his right under Article I, section 9, of the Oregon Constitution, to be free from unreasonable searches. This court has held:

> "Normally, in order for a search to be constitutionally permissible, the police must have a search warrant. * * *
>
> "A warrantless search by the police is 'reasonable' under Article I, section 9, when the search falls into one or another of the recognized exceptions to the warrant requirement." *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992) (citations omitted).

The state argues that the warrantless search of defendant's wallet was reasonable because it falls within the officer-safety prong of the search incident to a lawful arrest exception to the warrant requirement. In *State v. Caraher*, 293 Or 741, 757, 653 P2d 942 (1982), this court recognized that, unlike under federal search and seizure law, a "valid custodial arrest does not alone give rise to a unique right to search. Such a warrantless search must be justified by the circumstances surrounding the arrest."

Under Article I, section 9, there are three valid justifications for a search incident to lawful arrest: to protect the officer's safety, to prevent the destruction of evidence, and to discover evidence relevant to the crime for which the defendant was arrested. *State v. Caraher, supra*, 293 Or at 759. In this case, the trial court concluded that the warrantless search of defendant's wallet was a valid search conducted to protect officer safety and to prevent escape. In this case, the state does not argue that the search of the wallet was conducted either to prevent the destruction of evidence or to discover evidence relevant to the crime for which defendant was arrested. Thus, we must decide whether this was a valid search pursuant to the officer-safety prong of the search incident to a lawful arrest exception to the warrant requirement.[2]

---

[2] The state does not contend that this search might fall within any of the other recognized exceptions to the warrant requirement. Accordingly, we do not discuss any of those other exceptions.

■ This court has stated that "a pat-down or limited search for weapons to protect the officer or to prevent escape would be justified whenever a person is taken into custody." *State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986). Beyond that limited search, however, a further search incident to arrest conducted to protect officer safety or to prevent escape must be reasonable, taking into account all the facts surrounding the arrest. *See State v. Caraher*, 293 Or at 758-59 (a search for evidence of the crime for which the defendant was arrested must be reasonable under the circumstances). Thus, an officer may conduct a further protective search if he or she develops a reasonable suspicion, based on specific and articulable facts, that the person in custody poses a serious threat of harm or escape and that a search would lessen or eliminate that threat. *See State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) ("Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present.").

■ The standard articulated in *Bates* was applied recently in *State v. Ehly*, 317 Or 66, 81-84, 854 P2d 421 (1993). In that case, two police officers were called to a motel room to confront the defendant, whom the officers knew to be a methamphetamine user, and who appeared at the time to be under the influence of methamphetamine. *State v. Ehly, supra*, 317 Or at 69-70. While the officers were in the room, the defendant began to rummage through his gym bag, with both hands concealed. *Id.* at 71. The officers knew that the defendant was a friend of a man, whom the officers saw leaving the motel parking lot and who was believed to be in possession of a handgun. *Id.* at 69. This court held that the officers had a reasonable suspicion to believe that there was a gun in the bag and that, under the circumstances, it was reasonable for one of the officers to dump out the contents of the bag. *Id.* at 83.

This case is far from the type of reasonable suspicion of danger found in *Ehly*. Unlike in *Ehly*, where the officers had a particularized suspicion of danger, the officer in this

case testified that he searched defendant's wallet because it was his "normal practice" to do so. Indeed, in this case, the officer testified affirmatively that he had *no* specific reason to believe that defendant's wallet contained either a weapon or a means of escape. He testified that his training and experience led him to believe that the wallet *could have* contained one of those items, but that he could not tell until he opened the wallet.

There is nothing to suggest that the officer had a *reasonable* suspicion that defendant posed an immediate threat of escape or harm. It is not tenable to suggest that the mere fact that defendant carried a wallet gave the officer reasonable, articulable suspicion that defendant posed a threat of serious physical harm or a threat of escape. Accordingly, the officer's decision to search the wallet was not reasonable under the circumstances.

The warrantless search of defendant's wallet was not justified under the officer-safety prong of the search incident to a lawful arrest exception to the warrant requirement. The state has not sought to justify the search under any other exception. We therefore hold that the search violated defendant's right under Article I, section 9, of the Oregon Constitution to be free from unreasonable searches, and the trial court erred in denying defendant's motion to suppress.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is vacated, and the case is remanded to that court for further proceedings.

**VAN HOOMISSEN, J.,** concurring.

## I.

In my view, this case makes no new law. The narrow issue presented, under Article I, section 9, of the Oregon Constitution, is whether the state sustained its burden to justify a warrantless search of defendant's wallet incident to his lawful arrest on the basis of "officer-safety" or "prevention of escape."

Determination of the legality of searches depends largely on the facts of each case. *State v. Ehly*, 317 Or 66, 74, 854 P2d 421 (1993). On the facts of this case (and in the light of what I believe to be the hopelessly confused condition of

Oregon appellate law regarding "officer-safety" searches),[1] I agree with the majority that the search of defendant's wallet violated Article I, section 9.

Defendant does not challenge the lawfulness of the stop, the arrest, the "pat-down," or the seizure of his wallet. He challenges only the search of his wallet after it had been seized by the officer. The state relies solely on the "officer-safety" or "prevention of escape" prongs of the search incident to arrest exception to the warrant requirement.[2]

The officer testified that he had no specific reason to believe that defendant's wallet contained either a weapon or a means of escape. The officer did not testify that he believed that his safety was at risk; he did not articulate any specific facts supporting a reasonable belief that his safety was at risk. In effect, he testified that he always searches items taken from the persons he arrests. Insofar as the record shows, defendant was cooperative during the arrest. There also was a second officer present at the time of the arrest. Defendant's hands were handcuffed behind his back. The record suggests that the officer did not intend to return the wallet to defendant after searching it; rather, he put the wallet in his briefcase and kept it there until defendant was received at the police station. The trial court did not find that the officer

---

[1] In *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982) this court indicated that it was abandoning the federal line of cases concerning searches incident to arrest. *But see State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986) (pat-down or limited search for weapons for officer safety justified "whenever a person is taken into custody"); *see also* 1 Crim Law CLE § 6.40 at 6-34 (1994) ("The supreme court has not yet addressed the issue of what justification is sufficient to engage in more than a pat-down search [incident to arrest] for officer safety.").

The 1994 Criminal Law CLE manual recognizes the potential divergence of appellate case law here:

"QUERY: Is the supreme court's decision in *State v. Ehly*, 317 Or 66, 854 P2d 421 (1993) (officer may order defendant to empty bag on reasonable suspicion it contains a weapon), inconsistent with the court of appeals decision in *State v. Jones*, [103 Or App 123, 796 P2d 670 (1990), *rev den* 311 Or 166 (1991)] (officer may not open container suspected to contain weapon as part of search incident to arrest)?" 1 Crim Law CLE § 6.40 at 6-35 (1994).

[2] In the trial court, the state specifically disclaimed an alternative "inevitable discovery" argument. *See State v. Paulson*, 313 Or 346, 353 n 3, 833 P2d 1278 (1992) (the doctrine of "inevitable discovery" is recognized in Oregon statutory and case law). The state does not argue that the evidence was obtained lawfully as a result of an inventory policy. *See State v. Atkinson*, 298 Or 1, 7, 688 P2d 832 (1984) (holding that a policy may be adopted and uniformly administered to inventory the contents of vehicles in order to protect private property and for ancillary purposes).

reasonably believed the wallet might contain a razor blade or means of escape — rather, the trial court merely accepted the officer's testimony about his belief, apparently, because it was uncontradicted. There appears to be nothing at all in the record to support a conclusion that the officer actually thought his safety was threatened. While accepting at face value the officer's "beliefs," there is still the question whether it is "reasonable" to believe that a defendant handcuffed behind his back could seize a wallet from an officer, remove a razor blade or means of escape from the wallet, and then use the razor blade to threaten the officer's safety, or to use the means of escape to get away. That feat, obviously, would become even less likely when the officer put the wallet in his briefcase. The facts do not support an "officer-safety" or "prevention of escape" exception in this case.

Defendant urges this court to adopt a *per se* rule that an officer may never search a closed container incident to arrest under the "officer-safety" or "means of escape" exception once the container is outside the arrested person's possession. A similar argument was made and was rejected by this court in *State v. Ehly, supra,* 317 Or at 82-83. As this court explained in *Ehly,* that for purposes of "officer safety" searches, courts look to the totality of the circumstances to determine whether the precautions taken by the officer were reasonable at the time the decision was made. *Id.* at 79. In this case, the totality of the circumstances, as shown by the record, did not justify a reasonable belief that defendant presented an immediate threat of serious physical injury to the officer or that defendant presented a threat of escape.

A police officer in the field frequently must make life-or-death decisions in a matter of seconds and there may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. For those reasons, it is not this court's function to uncharitably second-guess an officer's judgment. An officer must be allowed considerable latitude to take safety precautions in such situations. Our inquiry therefore is limited to whether the precautions taken were reasonable under the circumstances as they appeared at the time the decision was made. *See State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987) (officer may take reasonable steps to protect himself or others

if, during course of a lawful encounter with citizen, officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present).

I agree with the majority's application of the test from *Ehly* and *Bates* to the facts of this case.[3]

## II.

I write separately to state that, were I writing on a clean slate, I would adopt the federal rule on searches incident to arrest announced in *United States v. Robinson*, 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973) and *Gustafson v. Florida*, 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973). *See State v. Lowry*, 295 Or 337, 349-55, 667 P2d 996 (1983) (Jones, J., specially concurring) (criticizing departure from *Robinson/Gustafson* rule and arguing that *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982) is irreconcilable with *State v. Elkins*, 245 Or 279, 422 P2d 250 (1966) regarding the opening of closed containers); *see also State v. Brown*, 291 Or 642, 661, 634 P2d 212 (1981) (Linde, J., concurring) ("for practical reasons [this court] generally respects the voluminous and familiar Fourth Amendment jurisprudence * * * unless 'persuasive reasons' are shown for a different analysis"). I conclude that no "persuasive reasons" are shown for a different analysis in the majority opinion in *Caraher*.

In *Robinson, supra*, and *Gustafson, supra*, the Supreme Court of the United States rejected the argument that the scope of a search incident to arrest must depend on the degree to which, on a case-by-case basis, the arresting officer possesses reason to search for particular items. Thus, the federal rule permits a full search of the person and possessions (at least, those carried on the person) of the arrestee, both for weapons and escape devices and for fruits of the crime, without additional justification for search beyond the fact of the arrest itself.[4]

---

[3] Although *State v. Ehly, supra*, and *State v. Bates*, 304 Or 519, 747 P2d 191 (1987) are "*Terry*-stop" cases rather than search incident to arrest cases, the rationale behind the "officer safety" exception is identical in both contexts.

[4] *See State v. Anfield*, 313 Or 554, 562, 836 P2d 1337 (1992) (addressing defendant's Fourth Amendment argument, noting that a complete search of an arrested person following a valid arrest is not a violation of the Fourth Amendment).

In *State v. Florance*, 270 Or 169, 182-86, 527 P2d 1202 (1974), this court adopted the federal *Robinson/ Gustafson* rule under the Oregon Constitution, primarily for its simplicity and because of the value of having a state rule that was consistent with the federal rule. *Id.* at 182-86. However, in *State v. Caraher, supra,* in the context of a search for evidence of the crime for which the defendant had been arrested, this court overruled *Florance* and adopted a new rule that an arrest, by itself, does not sufficiently justify a search incident to arrest *for evidence.* 293 Or at 756-57.

I read *Caraher* to leave in doubt whether that case actually changed the law governing "officer-safety" searches incident to arrest. *See id.* at 759 (suggesting that *Caraher* left the law governing "officer-safety" searches unchanged from *State v. Florance*); *see also State v. Lowry, supra,* 295 Or at 349 ("*Caraher* did not originate a new rule but reasserted a rule stated in three earlier Oregon decisions cited in the opinion, decisions that 'expanded the justification for a search incident to arrest beyond considerations of the officer's safety and destruction of evidence' to permit a reasonable search 'when it is relevant to the crime for which defendant is being arrested.' ").[5]

In *Caraher*, this court specifically stated that the search of the defendant's purse "was not for the protection of the police[.]" *Id.* at 759. I therefore am persuaded that the rule of law from *Caraher* is simply inapplicable to the "officer-safety" exception, because that exception was not in issue in *Caraher. See State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986) ("Of course, a pat-down *or limited search for weapons* to protect the officer or to prevent escape would be justified *whenever* a person is taken into custody."). (Emphasis added.) Thus, the rule of law from *Caraher* regarding searches incident to arrest is a narrow rule.

The general rule from *Robinson* and *Gustafson* regarding searches incident to arrest is much preferable to the confusion caused by *Caraher*. For example, the rationale

---

[5] *See State v. Owens, supra,* 302 Or at 201 (full discussion of how *Caraher* abandoned *Florance, Gustafson,* and *Robinson,* and returned Oregon search and seizure law to the "traditional rule" based on *State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968) and *State v. Krogness,* 238 Or 135, 388 P2d 120 (1963), *cert den* 377 US 992 (1964)).

for "inventory searches" set out in *State v. Atkinson*, 298 Or 1, 7-8, 688 P2d 832 (1984), seems to apply to all arrest or impoundment inventory situations: (1) to protect the property; (2) to prevent false claims against the police for lost or stolen property; and (3) to reduce danger to police. In *State v. Perry*, 298 Or 21, 688 P2d 827 (1987), which was a companion case to *State v. Atkinson, supra*, this court found that a search of luggage of a person detained on a "civil hold" for detoxification was not justified. 298 Or at 23. However, that case makes it clear that a *more* intrusive search of the property of an arrestee booked for a crime would be permissible. *Id.* at 27. *See also* ORS 133.455 (booking officer to give receipts for money or other valuables). Under the *Atkinson* "inventory search" rationale, an officer should be able to open a wallet or purse incident to arrest because of the first two justifications listed above which justify opening a wallet or purse when the arrestee is being booked.

Under the current approach in this case, the arresting officer may seize a wallet (for "officer safety" or "means of escape" purposes) but may not open it unless the officer can articulate specific facts supporting a reasonable belief that his or her safety is at risk, or that the wallet contains means of escape, or evidence of the crime for which the person is arrested. The officer therefore retains the wallet, gives it to the booking officer at the jail, who *may* open it, and who issues a receipt for whatever is inside. Now, this procedure not only seems rather silly, but actually could serve to defeat the purpose of the second rationale from *Atkinson* listed above — the defendant can now claim that the arresting officer, who took his wallet and had it in his possession between the arrest and the booking, took money and valuables from the wallet.

Oregon should follow *Robinson/Gustafson*.[6]

---

[6] *See* 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 5.2(c) at 448-49 (2d ed 1987) (a very cogent analysis criticizing case-by-case determination of scope of searches incident to arrest as necessarily involving a "highly sophisticated set of rules, qualified by all sorts of ifs, ands and buts and requiring the drawing of subtle nuances and hairline distinctions" and as being impossible for police officers to apply in the field).