Argued and submitted March 31, reversed and remanded for new trial
October 18, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## GUS KOMAS,
*Appellant.*

## (C980130324; CA A102759)

13 P3d 157

Robin A. Jones, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Edmonds, Presiding Judge, and Armstrong, Judge, and Ceniceros, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals his conviction for delivery of a controlled substance. ORS 475.992(1).[1] He assigns error to the trial court's denial of his motion to suppress marijuana, money and two knives found in his belongings after his arrest and incriminating statements that he made during and after the arrest. We reverse.

Portland Police Officer White, who was patrolling the area by bicycle, stopped defendant after watching him riding his skateboard in a dangerous manner on a crowded street. The officer determined from identifying information that defendant gave him that there was an outstanding warrant for defendant's arrest. As a crowd began to gather, Officer White handcuffed defendant and called for a back-up officer. The crowd included acquaintances of defendant.

After handcuffing defendant, White conducted a patdown. He found a large pouch-like wallet on defendant's person. Defendant stated that it contained his rent money in the amount of $360 and asked White to give the wallet to a friend in the crowd, so that he wouldn't have to take it to jail with him. White briefly looked through the wallet, found that it did contain a large amount of money and gave it to the friend whom defendant designated. He did not count the money or otherwise disturb the contents. White also allowed the friend to take defendant's skateboard.

---

[1] ORS 475.992 provides, in part:

"Except as authorized by ORS 475.005 to 475.285 and 475.940 to 475.995, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to:

"(a) A controlled substance in Schedule I, is guilty of a Class A felony.

"(b) A controlled substance in Schedule II, is guilty of a Class B felony.

"(c) A controlled substance in Schedule III, is guilty of a Class C felony.

"(d) A controlled substance in Schedule IV, is guilty of a Class B misdemeanor.

"(e) A controlled substance in Schedule V, is guilty of a Class C misdemeanor.

"(2) Notwithstanding the placement of marijuana in a schedule of controlled substances under ORS 475.005 to 475.285 and 475.940 to 475.995:

"(a) Any person who delivers marijuana for consideration is guilty of a Class B felony."

Officer Busse arrived as the wallet was being handed to the friend. As soon as he arrived, he took custody of defendant and moved him toward his patrol car. Defendant was wearing a shoulder bag. The bag was about 10 inches square in size and hung by a strap. The strap was attached to the bag on both ends, and the bag could not be taken from defendant without either removing the handcuffs or destroying the strap. Defendant asked Busse to take off the handcuffs and to allow him to give the bag to a friend in the crowd. The officer decided not to remove the handcuffs, and instead, knowing that the bag would accompany defendant into the car, he opened it to inventory its contents. Inside, he found two knives and six small plastic baggies that contained 27.7 grams of marijuana. Defendant saw Busse remove the items from the shoulder bag and said spontaneously, "That's my medicine. I use it for healing purposes." Defendant was placed in the police car and while being transported, offered the statement that he was a "medicine man." His statement was not in response to any questioning.

■ Defendant moved to suppress the evidence of the contents of the wallet, the evidence seized from the shoulder bag and his statements made to White and Busse. The trial court denied defendant's motion to suppress, ruling:

"The inventory of the shoulder bag or purse was required by Portland City Code Sec. 14.10.040. The code provisions comply with Art. I, sec. 9.

"* * * * *

"The officer was authorized to remove the wallet from defendant's person incident to arrest. The officer was also authorized to look into the wallet incident to defendant's arrest or as a safety precaution before either returning it to defendant or giving it to a stranger.

"* * * * *

"All of defendant's incriminating statements about being a 'medicine man' were completely volunteered and were not the product of any direct or indirect police interrogation or coercion. Because they were completely volunteered statements, they are admissible at trial."

On appeal, defendant argues that both the examination of the wallet's interior and the inventory of the shoulder bag were unlawful searches. He argues also that his incriminating statements were made as a result of the unlawful searches and were therefore subject to suppression under *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). In our review, we are bound by the trial court's findings of fact if "there is constitutionally sufficient evidence in the record to support them," *State v. Pamperien*, 156 Or App 153, 155, 967 P2d 503 (1998), and we review the trial court's legal conclusions for errors of law. *Id* at 155.

 The trial court held that White's search of defendant's wallet was justified by the officer's concerns for his own safety, because the wallet was being delivered to defendant's friend in a crowd of people watching the arrest. A patdown or a limited search for weapons to protect an arresting officer or to prevent an escape is a permissible search under Article I, section 9, of the Oregon Constitution. *State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986). Beyond that, a search conducted for officer safety or to prevent escape must be reasonable under the surrounding circumstances.

> "Thus, an officer may conduct a further protective search if he or she develops a reasonable suspicion, based on specific and articulable facts, that the person in custody poses a serious threat of harm or escape and that a search would lessen or eliminate that threat."

*State v. Hoskinson*, 320 Or 83, 87, 879 P2d 180 (1994).

Officer White testified that his justification for searching defendant's wallet was to look for weapons in it, in order to prevent a member of the crowd from aiding in defendant's escape. The wallet itself is described as "a single folding man's wallet that folds once or maybe two times." The officer described it in his report as a "pouch wallet type thing," and recalled that it may have been zippered or folded over, but that it was larger than an ordinary wallet. As to the other circumstances surrounding the arrest, White testified:

> "[Defendant] requested me to turn over his wallet to a friend of his who was there. I checked the wallet for weapons before giving it to any of his friends, obviously because

he's in custody and there's a group of his friends standing on 35th and Hawthorne.

"* * * * *

"[T]he streets were full of people. There's outside seating at one of the restaurants right there and there were probably a half a dozen people who from age group and appearance were associates of [defendant] in addition to probably a couple dozen other folks just on about their normal business on foot in the area."

White testified that, earlier, he had seen defendant talking with the group of people who watched his arrest. Also, Busse, who arrived on the scene after the search, testified:

"We had attracted quite a large crowd, some of which I had to ask to step back. Several people asked me what he was under arrest for and I don't know why they wanted to know that, but so from the voice inflections and from the reason for me being asked to respond [as cover officer], I assumed that there was a problem."

As to defendant's demeanor, White testified that he was

"a little apprehensive because of [defendant's] uncooperative demeanor or his unwillingness to talk to me and unwillingness to answer my question about who he was subsequently."

However, White also testified:

"Q. Did he ever threaten you or anybody around you?

"A. No.

"Q. * * * Initially, [defendant] was uncooperative and then you described him becoming extremely cooperative; that's accurate, right?

"A. Yes.

"Q. Did he remain extremely cooperative from the point that he began that to the point where he was taken into custody?

"A. Yes.

"Q. He never tried to flee or hurt you or the other officers around you at the time he was taken into custody?

"A. No."

White explained:

> "I contacted [defendant] because he was creating a hazard to the people around me [by skateboarding recklessly,] and as to a specific threat of assault, I usually regard pretty much everybody I take, you know, a police action against or make contact with in an official capacity as being a potential threat to myself."

We hold that the record in this case is insufficient to meet the standard imposed by *Hoskinson*. There is no evidence of specific and articulable facts that would give rise to a reasonable suspicion that the wallet contained a weapon that a member of the crowd could use to facilitate defendant's escape. Busse's testimony is the most specific about any threat of danger from the crowd. However, that evidence is about the crowd's demeanor after the search of the wallet had been completed. Similar to what occurred in *Hoskinson*, it appears that the search was made because it was the normal practice for the officer, when delivering an article belonging to an arrested person to a bystander, to check it for weapons. As the court said in that case, the mere fact that a defendant carries a wallet does not create a reasonable articulable suspicion that the contents of the wallet create a threat to the officer's safety.[2] The trial court erred when it held that White's observations of the contents of the wallet were admissible as evidence.

Additionally, defendant made statements about the contents of his wallet, which he also sought to have suppressed. The specific comments were that there was $360 in his wallet, that it was for the payment of rent and that he did not want to take it to jail with him. The record is unclear

---

[2] As the Supreme Court noted in *State v. Bates*, 304 Or 519, 527, 747 P2d 991 (1987), cases like this are frustrating because "if there was something more in this case than [the officer] testified to—it was not brought out [and] we cannot presume the existence of other favorable facts; we must confine our review to the record made." While it could be that the wallet was large enough to contain a weapon that could have been used by a member of the hostile crowd to help defendant escape or that specific threats were being made against White at that time, those kinds of facts do not appear in this record. *Hoskinson* requires more evidence than an officer's testimony that, based on his or her training and experience, a wallet could have contained a weapon or means of escape. *Hoskinson*, 320 Or at 88.

whether he made those statements before, during, or after the search. According to the evidence, defendant may have had a motive for telling the officer what was in his wallet, entirely apart from the fact that the money had been revealed during the search, because defendant "wanted his friend to take it home so that his significant other could pay the rent with it." We cannot determine whether defendant's statements were related or unrelated to the unlawful search. On remand, the trial court must determine whether the statements were made because of an "exploitation of the [illegal search] or instead by means sufficiently distinguishable to be purged of the primary taint." *State v. Quinn*, 290 Or 383, 396, 623 P2d 630 (1981) (quoting Maguire, Evidence of Guilt, 221 (1959)).

■ As to the contents of the shoulder bag, the trial court ruled that the bag was properly searched under a City of Portland ordinance authorizing the inventory of the personal property of an arrested person. Searches conducted as inventories are excepted from the warrant requirement, if they are conducted "pursuant to a properly authorized program designed and systematically administered" to achieve an appropriate stated purpose. *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984). Here, the shoulder bag was part of defendant's personal effects and was attached to his body in such a way that it would remain with him in the police car unless defendant's handcuffs were removed.[3] The shoulder bag was worn over defendant's shoulder and across his body, akin to either a purse or a fanny pack. As such, the inventory of the bag fell within the limits of Portland City Code 14.10.040. PCC 14.10.40(A)(1) requires an officer to inventory the personal property in the possession of a person taken into police custody. PCC 14.10.040(C)(1) requires that the inventory occur before a subject is placed into a patrol car. PCC 14.10.040(C)(2) and (3) require the inventory to encompass all open containers and certain closed containers found on the defendant's person. PCC 14.10.040(C)(3)(c) provides that a closed container in the possession of an arrested person is to have its contents inventoried only when the closed container

---

[3] We have not been apprised of any constitutional principle that would have required Busse to remove the handcuffs, particularly in light of the increasing hostility of the crowd.

is designed for the carrying of money and/or small valuables on or about the person, including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs. Consequently, the inventory of the contents of the shoulder bag was in accordance with the procedures prescribed by the ordinance.

Nonetheless, defendant attacks the validity of the ordinance itself. He asserts that because of the ordinance's silence on the issue, officers have discretion about whether to comply with the request of an arrested person to give the person's personal property to a friend before being taken to jail. Defendant points to the testimony of White:

"Q: You have the option of allowing people with personal property to give it to their friends or take it with them; isn't that accurate?

"A: I'm not prohibited from allowing them to give it to their friends.

"Q. It's your choice. It's an officer discretion call, correct?

"A. That's correct."

In *Atkinson*, the court held that, in order for an inventory policy to be a valid exception to the warrant requirement, it must be "designed and systematically administered so that the inventory involves *no exercise of discretion* by the law enforcement person directing or taking the inventory." 298 Or at 10 (emphasis added). Defendant reasons that because the ordinance does not contain language that limits an officer's discretion about whether to take custody of the property or release it to a third party, the ordinance is invalid.

Officer Busse had two decisions to make in this case. First, he had to decide whether he would keep defendant's shoulder bag with defendant, or whether he would remove defendant's handcuffs and give the bag to defendant's friend. Second, he had to decide what to do with the shoulder bag if he determined that it would accompany defendant to jail. He could inventory it as "one shoulder bag," or he could inventory the bag's contents. Clearly, *Atkinson* applies to the second decision. In *State v. Willhite,* 110 Or App 567, 824 P2d 419 (1992), we held that, to be valid, an ordinance had to limit the officer's discretion about whether to search an

impounded vehicle and it had to limit his discretion regarding the treatment of closed containers in the vehicle. However, defendant does not cite to any case factually on point as to the issue presented by defendant's argument about the first decision Busse had to make.[4]

Accordingly, we begin our analysis with several axioms regarding Article I, section 9, protections.[5] Article I, section 9, protects privacy and possessory interests, and it is violated when a search or seizure occurs and the invasion of those interests is unreasonable. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). An inventory involves a search that is deemed reasonable because it is made for purposes of protecting an arrested person's personal property from loss or theft and to prevent liability of the government for that loss or theft. Busse's decision not to give the bag to defendant's friend was not a search. The search did not occur until he inventoried the contents of the bag pursuant to the ordinance. However, the decision to keep the bag was a continuation of the seizure that had previously occurred when White arrested defendant. Thus, the question becomes whether the retention of the bag by Busse was required to be governed by the city's inventory policy in order to comply with Article I, section 9.

Our analysis is informed by our decision in *State v. Guance*, 114 Or App 190, 834 P2d 512, *rev den* 315 Or 271, 844 P2d 207 (1992). In *Guance*, an officer stopped a driver who was a suspected prowler. The officer arrested the driver on an outstanding warrant and decided to have the car towed, both because the car was blocking a lane of traffic and the officer suspected that the tires were stolen. The officer also suspected that the car itself could have been stolen, and

---

[4] No other provision of the Portland City Code has been brought to our attention which either bestows or limits discretion about the giving of personal property of an arrested person to a designee, and we know of no Oregon case discussing how such a decision must be made.

[5] Article I, section 9, of the Oregon Constitution, reads:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects, *against unreasonable search, or seizure*; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." (Emphasis added.)

that it could have contained drugs. A Portland Bureau of Police General Order mandated that an inventory be conducted on every vehicle that was towed. The officer impounded the car, conducted a general inventory and found cocaine in the car under a pair of gloves. The defendant argued that the impoundment was unlawful because the officer's intent was to use the mandatory inventory as the means for an investigative search. As to the officer's first decision—whether to impound the car—this court held that

"[a]n officer's decision to impound a vehicle may involve the exercise of discretion. * * * Although an officer may suspect criminal activity when he decides to have a car impounded, his suspicions can play no part in the discretion that he exercises when deciding whether to impound a car." *Id.* at 195.

As to the second decision—whether to conduct an inventory—we held, "[a]n inventory policy must 'adequately eliminat[e] individual discretion about *whether* to inventory a vehicle.'" *Id.* at 194, quoting Willhite. The underlying premise of *Guance* is that inventory policies govern the examination of property and not its seizure. Consequently, defendant's argument that the city's ordinance is invalid because it provides no limitations on an officer's discretion about whether to release seized property to a third person is incorrect.

■■■■■ Defendant's final contention is that his statements that the marijuana was medicine, that he is a medicine man, and that he distributes his medicine, should have been suppressed because they were solicited in violation of *Miranda*. *Miranda* warnings are required only when the defendant is subjected to a "custodial interrogation." *Miranda*, 384 US 444. Defendant was in custody when he made the above statements, but they were not the product of police interrogation. Finally, we perceive no relationship between defendant's statements about the contents of the wallet and his statements about the contents of the shoulder bag. Therefore, even if the trial court finds that the statements about the wallet's contents are inadmissible as tainted by a prior unlawful search, that finding would not affect the admissibility of the statements about the marijuana found in the shoulder bag.

In summary, the admission of the officer's testimony about the contents of the wallet was error. On retrial, that evidence must be excluded. Also, on remand, the trial court must make a determination of whether defendant's statements about the contents of the wallet were tainted by the occurrence of the search, and are therefore inadmissible, or instead are admissible because they were spontaneous and volunteered. Finally, we conclude that the trial court properly admitted testimony about the contents of the shoulder bag and the statements of the defendant about the marijuana found in the bag.

Reversed and remanded for a new trial.