Argued and submitted April 29, reversed and remanded September 22, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JULIA MAE NELL,
*Defendant-Appellant.*

Deschutes County Circuit Court
07FE1645MA; A138841

240 P3d 726

Ernest G. Lannet, Senior Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Brandon G. Williams, Deputy Public Defender, Office of Public Defense Services.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who entered a conditional plea of guilty, ORS 135.335(3),[1] for possession of methamphetamine, ORS 475.894, appeals from the resulting judgment, assigning error to the trial court's denial of her motion to suppress statements that she made following a police officer's warrantless search of her wallet. We agree with defendant that the search of her wallet violated Article I, section 9, of the Oregon Constitution,[2] and that her statements were the unattenuated product of that illegality. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress her statements and reverse and remand.

We take the uncontroverted facts from the testimony of the arresting officer, Deluca, and a corrections deputy, Myers, who were the only two witnesses to testify at the suppression hearing. Deluca arrested defendant on an outstanding warrant for criminal mistreatment approximately six to 10 feet from her parked vehicle. According to Deluca, defendant, at that point, was "very cooperative. She was quiet, she was a little stunned * * * about the warrant, but she was * * * very cooperative and * * * understanding. She just had questions about the warrant."

At the time of her arrest, defendant was holding a wallet that was approximately "four to five inches and not that tall." Deluca asked defendant to place the wallet on the hood of her car, but defendant did not comply.[3] According to the officer,

"[defendant] started making movements to the driver's door of her vehicle and she wanted to put the wallet inside the vehicle. For officer safety reasons we said 'no.' We had to

---

[1] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

[2] Article I, section 9, of the Oregon Constitution provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[3] By this point, another officer had arrived.

just place our hands on her. We didn't have to use use of force but just place our hands on her and prevent her from getting in the vehicle, and told her 'no, put the wallet on the hood of the car, put your hands behind your back.' "

When asked, at the suppression hearing, to explain his concerns about defendant's movement toward her vehicle, Deluca replied, "I don't know what's in the vehicle. I also don't know what's in the wallet. * * * I don't know if there's weapons, contraband, means of escape."

After Deluca made another request of defendant to place her wallet on the hood of the car, defendant "complied, placed her hands behind her back." Deluca "handcuffed her, and from there we searched the wallet[.]" When Deluca opened the wallet, he saw a "plastic baggy" with methamphetamine and defendant's identification and credit cards. Deluca then

"told [defendant] about what I have found, read her her Miranda warning and began to question her about her use, if I'd find fingerprints on it, that, and was the last time she used, how much was it worth, and she provided all the information needed.

"* * * * *

"* * * [S]he told me it was approximately a twenty sack, which is street terms for about 2, 2.0 grams, worth about $20. She told me that she eats the methamphetamine and that we would not find any other paraphernalia on her person or, or in her car. And that if we did take fingerprints of the bag, we would find her fingerprints on this bag of methamphetamine."

According to Deluca, if he had not searched the wallet, it "would have been taken with [defendant] to the Deschutes County jail for reasons of identification." At the suppression hearing, Myers, a corrections deputy at the jail, testified that, pursuant to a policy, when an arrestee is booked into the jail, "[a]ll the possessions in their pockets are taken out and placed onto the counter to be inventoried as well as purses, wallets, and everything else." The deputy testified that, if defendant had had the wallet in her possession when she arrived at the jail, it would have been searched pursuant to the inventory policy.

Defendant moved to suppress the evidence found in the wallet and defendant's subsequent statements under Article I, section 9, and the Fourth Amendment to the United States Constitution. Defendant contended that the warrantless search of her wallet did not fall within a recognized exception to the warrant requirement. Specifically, defendant asserted that the search incident to arrest doctrine did not apply because, in this case, there were no officer safety concerns and the search was unnecessary to prevent the destruction of evidence or to discover evidence relevant to the crime of criminal mistreatment for which defendant was arrested. Accordingly, defendant asserted, because the search was unlawful and the evidence obtained as a result of the search was the unattenuated product of that illegality, the evidence should be suppressed.

Conversely, before the trial court, the state contended that the search of defendant's wallet was a valid search incident to arrest on officer safety grounds. Alternatively, the state contended that, even if the search of defendant's wallet was not a valid search incident to arrest, the methamphetamine would have been inevitably discovered during the inventory of defendant's possessions at the jail. The prosecutor acknowledged, however, that, even under the state's inevitable discovery theory,

"potentially the statements made would be suppressed in that had the officer not searched the wallet there at the scene but the wallet was found during the booking process, * * * I can't say the same questions would have been asked or answered by the defendant."

In denying defendant's motion, the court noted that there was no challenge to defendant's arrest pursuant to the warrant and reasoned that a

"[s]earch incident to arrest gives an officer the right to search the person for officer safety, for evidence of a crime, for means of escape. I think the issue here was, was really officer safety, means of escape, and the officer * * * was authorized to search that wallet at the scene."

Alternatively, the court reasoned that it was "inevitable that [the wallet] would have been searched pursuant to the inventory search procedure at the jail had it not been located at the

scene" and, thus, even if Deluca's search of the wallet was unlawful, the methamphetamine would not be suppressed. However, the court noted that a different result would be required with respect to defendant's statements if Deluca's search of the wallet was unlawful:

"[I]f the search incident to arrest was invalid and this motion to suppress was being denied solely based upon the inevitable search at the jail, then I think the statements made by the defendant between the time of her arrest and her arrival at the jail would be inadmissible and suppressed, but that's not what I found.

"I found that it was a valid search incident to an arrest. Therefore, * * * I don't think there's any reason to suppress any of her statements."

After the trial court denied defendant's motion, she entered a guilty plea reserving, in writing, the right to appeal the court's ruling on that motion. ORS 135.335(3). This appeal ultimately followed.

On appeal, the parties' contentions are more limited than they were before the trial court. As in the trial court, defendant contends on appeal that the search of defendant's wallet was unlawful under Article I, section 9.[4] According to defendant, the search "did not qualify as a search incident to arrest. Defendant had relinquished control of the wallet and was handcuffed during the search. Therefore, any potential threat posed by the contents of the wallet had dissipated."

Unlike her position in the trial court, however, defendant "does not contend that any contraband recovered from the wallet should have been suppressed." Instead, defendant "argues only that [her] statements should have been suppressed." According to defendant,

"a minimal factual nexus existed between defendant's statements and the unlawful search. Because defendant's

---

[4] Defendant also argues that "the warrantless search of the wallet was unlawful under the Fourth Amendment" to the United States Constitution and that, because her statements "were the fruit of the unlawful search," they should have been suppressed. However, because we agree with defendant that the officer conducted an unlawful search in violation of Article I, section 9, and ultimately reverse in light of that violation, we do not reach defendant's Fourth Amendment argument.

statements were closely connected to and not independent of the officer's unlawful conduct, the statements were obtained through exploitation in violation of Article I, section 9. Therefore, the trial court erred in refusing to suppress evidence of defendant's statements."

The state counters that the denial of suppression of defendant's statements was correct for either of two reasons. First, the state reiterates its position before the trial court that the warrantless search of defendant's wallet was lawful under the search incident to arrest doctrine because of the arresting officer's "reasonable concerns regarding officer safety."

Second, the state contends that, even if the search was unlawful, suppression of defendant's subsequent statements was not required because "the provision of the *Miranda* warnings, and defendant's decision to speak with full knowledge of her *Miranda* rights, broke any causal link between the unlawful search and defendant's statements." Although the state acknowledges that our decision in *State v. Ayles*, 220 Or App 606, 188 P3d 378 (2008), *aff'd*, 348 Or 622, 237 P3d 805 (2010), "requires the suppression of defendant's statements in this case if the wallet search was unlawful," it asserts that our decision in *Ayles* "is incorrect."

With the issues so framed, in determining whether the trial court erred in denying defendant's motion to suppress her statements, we must resolve two subsidiary questions: (1) Did the warrantless search of defendant's wallet violate Article I, section 9? (2) If it did, were defendant's statements obtained through the exploitation of that unlawful search? We begin with the first of those two questions.

As previously noted, Article I, section 9, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" "[W]arrantless * * * searches * * * are *per se* unreasonable unless falling within one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (internal quotation marks omitted). One such exception is a search incident to arrest. *State v. Hite*, 198 Or App 1, 6, 107 P3d 677 (2005). "There are three valid justifications for

a search incident to arrest: to protect the officers' safety or public safety, to prevent the destruction of evidence or the escape of the defendant, and to discover evidence relevant to the crime for which the defendant is being arrested." *Id.* Here, although defendant's wallet was on her person at the time of the arrest, any search of it was not relevant to the crime for which defendant was being arrested—that is criminal mistreatment. Thus, only the first of those justifications—that is, officer safety—is at issue in this case.

In *State v. Hoskinson*, 320 Or 83, 879 P2d 180 (1994), the Supreme Court addressed the officer safety justification for a search incident to arrest. In that case, after arresting the defendant, the officer handcuffed him and conducted "a 'pat-down search' of defendant's person. During the pat-down, the officer took a wallet from [the] defendant's back pocket. The officer opened and looked inside the wallet, discovering a small plastic bag containing powder residue that later tests confirmed was methamphetamine." *Id.* at 85. During the suppression hearing, the officer testified that, before he opened the wallet, he could not tell whether it contained a weapon or means of escape and that it was his " 'normal practice * * * to obtain the wallet and see if there are any weapons or any indications of things that would be used to escape that would alert [him] to search the subject more thoroughly and extensively for additional means of escape.' " *Id.* The trial court in that case ultimately concluded that the search was a valid search incident to arrest.

The Supreme Court disagreed. The court began by explaining the basic principles that govern a search incident to arrest on officer safety grounds:

"[A] pat-down or limited search for weapons to protect the officer or to prevent escape would be justified whenever a person is taken into custody. Beyond that limited search, however, a further search incident to arrest conducted to protect officer safety or to prevent escape must be reasonable, taking into account all the facts surrounding the arrest. Thus, an officer may conduct a further protective search if he or she develops a reasonable suspicion, based on specific and articulable facts, that the person in custody

poses a serious threat of harm or escape and that a search would lessen or eliminate that threat."

*Id.* at 87 (internal quotation marks and citations omitted).

The Supreme Court in *Hoskinson* then discussed, and distinguished, its recent application of those principles in *State v. Ehly*, 317 Or 66, 854 P2d 421 (1993), a case in which the court had upheld a search on officer safety grounds. As the *Hoskinson* court explained, in *Ehly*, the defendant "appeared at the time to be under the influence of methamphetamine," "[t]he officers knew that the defendant was a friend of a man, whom the officers saw leaving the motel parking lot and who was believed to be in possession of a handgun," and "the defendant began to rummage through his gym bag, with both hands concealed." 320 Or at 87. Accordingly, as the *Hoskinson* court noted, under such circumstances, the police officers in *Ehly* "had a reasonable suspicion to believe that there was a gun in the bag" and "it was reasonable for one of the officers to dump out the contents of the bag." *Id.*

The *Hoskinson* court then explained that the circumstances presented in that case were materially different from those in *Ehly*:

"Unlike in *Ehly*, where the officers had a particularized suspicion of danger, the officer in this case testified that he searched defendant's wallet because it was his 'normal practice' to do so. Indeed, in this case, the officer testified affirmatively that he had *no* specific reason to believe that defendant's wallet contained either a weapon or a means of escape. He testified that his training and experience led him to believe that the wallet *could have* contained one of those items, but that he could not tell until he opened the wallet.

"There is nothing to suggest that the officer had a *reasonable* suspicion that defendant posed an immediate threat of escape or harm. It is not tenable to suggest that the mere fact that defendant carried a wallet gave the officer reasonable, articulable suspicion that defendant posed a threat of serious physical harm or a threat of escape. Accordingly, the officer's decision to search the wallet was *not reasonable under the circumstances.*"

320 Or at 87-88 (emphasis in original). Accordingly, the court held that "the search violated [the] defendant's right under Article I, section 9, of the Oregon Constitution to be free from unreasonable searches, and the trial court erred in denying defendant's motion to suppress." *Id.* at 88.

The circumstances in this case are closely similar to those in *Hoskinson*. Here, although defendant did not initially comply with Deluca's request to place her wallet on the hood of the car, she complied with his second request, and Deluca testified that force was not used to obtain defendant's compliance. Thereafter, defendant was handcuffed and no longer had control of the wallet. Deluca's only justification for searching the wallet was that he did not "know what's in the wallet" and did not "know if there's weapons, contraband, means of escape." As in *Hoskinson*, there is nothing in this record to suggest that the officer "had a *reasonable* suspicion that defendant posed an immediate threat of escape or harm." 320 Or at 88 (emphasis in original). Accordingly, we conclude that the search of defendant's wallet violated Article I, section 9.

■　　Having concluded that the search was unlawful, we turn to the second question of whether defendant's statements were obtained through exploitation of that illegality. Here, after finding the methamphetamine in the wallet, the officer confronted defendant with what he had found, read defendant her *Miranda* warnings, and asked defendant several questions about her use of that drug. Based on the testimony at the hearing, those events occurred in rapid succession. Defendant's detailed incriminating statements concerning her use of methamphetamine and the amount and value of the methamphetamine immediately ensued. Under those circumstances, the minimal factual nexus between the unlawful search and defendant's incriminating statements is patent and the statements must be suppressed unless the state can demonstrate that the *Miranda* warnings were sufficient to attenuate the taint of the illegality.

■　　In that regard, as noted, the state acknowledges that our decision in *Ayles* is controlling and requires the suppression of defendant's statements—but contends that *Ayles* (which was pending before the Supreme Court at the time of

the briefing and oral argument of this case) was wrongly decided. The Supreme Court recently affirmed our decision in *Ayles*, *State v. Ayles*, 348 Or 622, 237 P3d 805 (2010), and nothing in the court's opinion[5] calls into question our conclusion that the rendition of *Miranda* warnings there did not operate *per se* to attenuate a suspect's statements upon being confronted with evidence obtained as a result of unlawful police conduct. *See Ayles*, 220 Or App at 614, 615-16 (rejecting the argument that "being given *Miranda* warnings operates as a 'universal solvent' to break the causal chain" (footnote omitted); holding that "the mere proximate provision of *Miranda* warnings following an unlawful seizure or entry does not *per se* attenuate the taint of the prior illegal police conduct"). The same principle is dispositive of the state's attenuation argument here. Accordingly, the trial court erred in denying defendant's motion to suppress her statements.

Reversed and remanded.

---

[5] Or, indeed, in the concurring and dissenting opinions.