Argued and submitted March 28, affirmed October 17, 2001

# STATE OF OREGON,
*Appellant,*

*v.*

# JESSE L. JOHNSON,
*Respondent.*

## 98C-46239; A107894

35 P3d 1024

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

David E. Groom, Public Defender, argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

## DEITS, C. J.

The state appeals an order suppressing evidence. ORS 138.060(3). We affirm.

Defendant was a suspect in a homicide investigation. Two detectives visited defendant's home for the purposes of arresting him on an unrelated probation violation charge and interviewing him about the homicide. The police transported defendant to the police station to interview him. After the interview, the police seized the clothing and boots that defendant was wearing, because they believed that the items matched a witness's description of clothing and boots worn by the killer. The police then obtained a search warrant for defendant's home and for "body standards" tests to be performed on defendant's person. The clothing and boots were not listed in the application for the search warrant.

Defendant moved to suppress the clothing and boots.[1] Defendant argued that the warrantless seizure violated Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution. The state responded that either the seizure was justified by an exception to the warrant requirement—i.e., exigency and probable cause—or, even if the seizure was illegal, the evidence should be saved from suppression under the inevitable discovery doctrine, relying on the Supreme Court's explanation of that doctrine in *State v. Miller*, 300 Or 203, 225-29, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986). Before the trial court, defendant contended that the inevitable discovery doctrine as set out in *former* ORS 133.683, *repealed by* Or Laws 1997, ch 313, § 37, and the constitutional inevitable discovery doctrine, as explained in cases including *Miller,* should not be applied and that suppression was required. The trial court granted defendant's motion, stating that "the doctrine of inevitable discovery is inapplicable to this case" and adopting defendant's written arguments on the issue. On

---

[1] Based on the record before us, it does not appear that the clothing and boots have yet been tested for other evidence that they might reveal—e.g., blood or hair of the victim—but apparently the state also (or at the least) wants to offer them at trial as being consistent with the witness's report of the clothing and boots that the killer was wearing.

appeal, the state argues that the trial court erred in granting defendant's motion.

■ Article I, section 9, of the Oregon Constitution, requires that evidence seized without a warrant or a constitutionally sufficient exception to the warrant requirement be excluded. *State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994); *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). Defendant's clothing and boots were seized without a warrant. On appeal, the state argues that it

> "does not challenge the circuit court's conclusion that the detectives' seizure of the defendant's clothing and shoes was unlawful. However, the illegality did not warrant suppression of those items because they nonetheless inevitably would have been lawfully seized."

Thus, because the state assumes that the evidence was illegally obtained, the only issue presented to us on appeal is whether the doctrine of inevitable discovery should save the evidence from suppression.[2]

The inevitable discovery doctrine was codified in part in *former* ORS 133.683, which provided:

---

[2] The only illegality presented in this case is the illegality of seizing the clothing or boots without a warrant or a valid exception to the warrant requirement. There is no suggestion in this record that the police became aware of the clothing and boots as a result of illegal conduct. Accordingly, we do not address questions that might arise were the police to obtain a warrant, properly supported by probable cause, to seize the clothing and evidence at issue here.

After this appeal was commenced, the state filed a motion with this court to supplement the record. According to that motion, after defendant had moved to suppress the clothing and boots, the state sought a warrant to seize those items. Before we ruled on the motion to supplement the record, the state filed a second motion, in which it asked for a "limited remand and for stay of appeal." We denied both motions. Under ORS 19.365(4), an appellate court may order that the record be corrected or supplemented when an error or omission from the record "substantially affects the merits of the appeal * * *." In light of the fact that the state did not assert in its motion that it had executed the warrant, that defendant had challenged a seizure effected pursuant to the warrant, or that the trial court had made a ruling related to issues raised about the warrant, we concluded that supplementation of the record would not substantially affect the merits of this appeal. Accordingly, we denied the state's motion to supplement the record. As to the second motion, under ORS 19.270(1), this court has jurisdiction over a case once an appeal has been properly initiated. Jurisdiction then exists only in this court, with the trial court retaining jurisdiction only for the limited purposes set out in ORS 19.270. None of those purposes is applicable to this situation. Accordingly, this court lacks the authority to retain jurisdiction and stay an appeal while ordering a remand to the trial court for purposes outside those authorized in ORS 19.270.

"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

The state first argues that the trial court erred to the extent that it based its ruling on *former* ORS 133.683. As we understand the state's argument, it contends that, because *former* ORS 133.683 was repealed before the suppression hearings in this case, the trial court erred in relying on that statute as a basis for suppressing the evidence. The state concedes that it did not raise the repeal of *former* ORS 133.683 to the trial court. In fact, at the time of trial, the state, defendant, and the trial court apparently were not aware that the statute had been repealed. The state contends that, nonetheless, we should review the applicability of the statute as an error apparent on the face of the record.

We agree that applying a statute that no longer was in effect is an error apparent on the face of the record and that we thus have discretion to correct it. *See generally State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (error is apparent on the face of the record if the legal point is obvious and not reasonably in dispute and the court need not go outside the record to find the error). In deciding whether to exercise our discretion to correct such an error, we may consider a number of factors. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (setting out nonexclusive list of factors). In this case, we exercise our discretion to reach the unpreserved error because of the gravity of the error in this context and because the court was presented with, and relied upon, an alternative and proper basis for its holding and, thus, the policies underlying the preservation doctrine were not offended.

As noted above, the state is correct that *former* ORS 133.683 was no longer in effect by the time of the suppression

hearings in this case. *Former* ORS 133.683 was repealed effective July 1, 1999. Or Laws 1997, ch 313, § 37. The suppression hearings in this case were held in late July and early August 1999. Accordingly, the trial court erred to the extent it based its ruling on *former* ORS 133.683.

On appeal, the state argues, alternatively, that, even if the statute were applicable, the trial court was wrong in limiting the statute's application to derivative evidence. As noted above, the state is correct that the statute was repealed and should not have been applied in this case. Consequently, it is not necessary to address the state's alternative argument regarding the scope of the statute's application.

■ Defendant argues on appeal that the trial court's ruling on his motion to suppress should be affirmed despite the court's erroneous reliance on *former* ORS 133.683, because the court's decision was based on constitutional as well as statutory grounds. We agree. As noted above, because the parties and the trial court were under the mistaken view that *former* ORS 133.683 was applicable, their focus was on the applicability and interpretation of *former* ORS 133.683. However, defendant is correct that *former* ORS 133.683 did not provide the only basis for suppression. The Fourth Amendment and Article I, section 9, are additional grounds for suppression, and defendant relied on those grounds in his arguments to the trial court. The trial court did not explicitly state the basis for its holding but, in concluding that the inevitable discovery doctrine did not save the evidence from suppression, the court adopted defendant's written arguments, which included references to constitutional bases for suppression.

■ The repeal of ORS 133.683 has left several questions regarding the doctrine of inevitable discovery. The question remains, for example, whether the doctrine applies to primary evidence. *See Miller*, 300 Or at 225-29; *State v. Grelinger*, 102 Or App 297, 303-04, 794 P2d 446 (1990); *State v. Schellhorn*, 95 Or App 297, 303, 769 P2d 221 (1989). However, even assuming the applicability of the constitutional inevitable discovery doctrine to these circumstances, which

involve primary evidence, for the reasons that we will discuss, we conclude that the doctrine does not save the evidence in this case from suppression.

The Supreme Court explained in *Miller* that, for evidence to be admissible under the constitutional inevitable discovery doctrine, the state must establish, by a preponderance of the evidence:

> "(1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question." 300 Or at 226.

In this case, the state did not present sufficient evidence to establish that the investigatory procedures used were sufficient to satisfy the *Miller* test. Officer Quakenbush testified:

> "Q. If you had not taken the defendant's clothing that's listed on State's Exhibit 8M after you concluded the interview of defendant, what would have happened to the clothing?
>
> "A. It—it would have gone with the defendant to the jail and been seized by the jail staff and placed in their inventory of property."

At best, that testimony establishes only that the evidence would have been taken into inventory at the jail,[3] not that the police would inevitably have seized the evidence and held it until trial. The testimony does not address how long the clothing would have been kept in the jail, whether it would have been released to a relative or friend of defendant's if he had so requested, or any steps that the police would have had to take to obtain a transfer of items in the jail's possession. Those are all things that defendant could have done with the clothes, because they remained his property while he was in custody.

---

[3] It might not be sufficient even to establish that. *See State v. Herrin*, 323 Or 188, 197, 915 P2d 953 (1996) (to establish valid inventory policy, record must demonstrate which politically accountable authority promulgated the inventory policy); *State v. Redmond*, 114 Or App 197, 202, 834 P2d 516 (1992) (officer's testimony about his impressions of jail's inventory procedures was not sufficient to establish what those inventory procedures were).

When a jail or other facility takes clothing or other items from a person who is about to be incarcerated, it does so for institutional purposes, in order to control what enters the facility and what items those who are incarcerated may possess. The jail has not "seized" the inmate's property in the sense that the facility may now treat that property as it desires. Rather, the items remain the property of the inmate; the jail has become the bailee of that property and holds it for the inmate's benefit. The jail may perform an inventory of the property to determine what it holds, but that inventory is limited because it is not an investigative search. As we recently pointed out, we generally avoid the term "inventory search," which some other jurisdictions use, because it is internally contradictory. "An inventory, whose purpose is simply to itemize what is present, is different in substance from a search, which is an endeavor to find evidence." *State v. Tyler*, 168 Or App 600, 602 n 2, 7 P3d 624 (2000).

This distinction is at the heart of the seminal Oregon cases involving inventories. Thus, in *State v. Atkinson*, 298 Or 1, 7-8, 688 P2d 832 (1984), the Supreme Court described three purposes commonly put forward to justify inventories of impounded property: (1) to protect the owner's property while in police custody; (2) to reduce or prevent the false assertion of claims against the police; or (3) to avoid dangers that might arise from the impoundment of uninventoried property. The first two justifications, in particular, necessarily assume that property inventoried at a jail remains the property of the inmate and that the jail authorities hold it on the inmate's behalf. Protecting the owner's property assumes that the owner will eventually receive it back, while preventing false claims assumes that the owner has the ability to bring a claim to recover for property lost while in the possession of jail authorities. The rules that the *Atkinson* court established for conducting inventories are based on the understanding that the property remains that of the person detained.

In *State v. Perry*, 298 Or 21, 688 P2d 827 (1984), the police took the defendant to the police station for detoxification. In doing so, they took custody of two pieces of luggage, which they then searched, finding the evidence at issue. Before opening the luggage, the police had no reason to

believe that it contained evidence of a crime. The Supreme Court noted that it was unquestionably proper, and possibly obligatory, for the police to take custody of the luggage. *Perry*, 298 Or at 24 & n 2. That did not necessarily mean, however, that the police had authority to do more than inventory it as two pieces of luggage. *See State v. Keller*, 265 Or 622, 626, 629, 510 P2d 568 (1973) (police should have inventoried a fishing tackle box as "one fishing tackle box" rather than opening and searching it). In arguing that the search was proper, the state emphasized ways in which a search of a detainee's property in police custody could protect the detainee's interests in that property. That argument necessarily assumed that the property remained that of the detainee and was only temporarily in police control.

Our cases arise from the same foundation. In *State v. Ridderbush*, 71 Or App 418, 692 P2d 667 (1984), the officer found a box in the defendant's possession at the time of his arrest. Although the officer disbelieved the defendant's statement that it contained pencils, he allowed the defendant to retain possession until he was booked at the jail. The officer who conducted the booking believed the defendant's statement but, nevertheless, opened the box, finding a razor inside. We held, based on *Atkinson* and *Perry*, that opening the box was improper. *Id.* at 426. Again, the basis of our opinion was that the box remained the defendant's property and that the police would return it to him on his release. It is not necessary to survey more recent cases except to note that they remain consistent on this point; indeed, it is hard to determine how we could look at taking custody of an inmate's property in any other light. Thus, even if the record establishes that the jail staff would have taken custody of defendant's clothing and boots as part of booking him does not show that the police would have used that clothing for the purposes of this criminal investigation.

The state also argues that it "presented evidence that the detectives would have included in their search warrant application a request for authorization to seize the clothing." However, the only relevant testimony at the portion of the transcript cited by the state is testimony by Officer Stoelk: "I had the affidavit [in support of a search warrant application], and I could have perfectly easily put that information in the

affidavit and seized it." As noted above, in its decision in *Miller*, 300 Or at 226, the court emphasized that for the inevitable discovery doctrine to be applicable it must be shown that the evidence *would have been* discovered absent the illegality by proper and predictable investigatory procedures and that "[i]t is not enough to show that the evidence 'might' or 'could have been' otherwise obtained." The officer's belief that he *could have* obtained a warrant is not sufficiently certain to satisfy the inevitable discovery doctrine.

The state did not meet its burden of establishing, by a preponderance of the evidence, that predictable and proper police procedures would have led to the seizure of defendant's clothing and boots. Accordingly, even under the constitutional inevitable discovery doctrine, the state was not entitled to prevail. The trial court did not err in granting defendant's motion to suppress.

Affirmed.