Submitted November 26, 2013, conviction for unlawful possession of marijuana reversed; otherwise affirmed April 16, appellant's petition for reconsideration filed May 13, allowed by opinion July 16, 2014
*See* 264 Or App 289, 331 P3d 1095 (2014)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHARLES EDWARD DURANDO, III,
*Defendant-Appellant.*

Beaverton Municipal Court
UC7594911, UI7594921;
A150008 (Control), A150007

323 P3d 985

Peter Gartlan, Chief Defender, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Defendant appeals a judgment of conviction for one count of failure to carry or present a license and one count of unlawful possession of less than one ounce of marijuana. In his first assignment of error, defendant argues that the trial court erred when it denied his motion to suppress a small bag of marijuana and an expired driver's license located during a search following his arrest for failure to present a license. The state acknowledges that the search was unlawful under Article I, section 9, of the Oregon Constitution and that the trial court should have suppressed the challenged evidence. Although the state concedes that the error requires reversal of defendant's conviction for marijuana possession, the state contends that the error was harmless as to the conviction for failure to present a license. As explained below, we agree with the state on both of those points. In his second assignment of error, defendant argues that the trial court erred when it excluded one of his proffered exhibits, which defendant claimed was a printout from the Washington State Department of Licensing website showing that defendant had a valid driver's license at the time of the stop. We reject that argument for the reasons set out below. Accordingly, we reverse defendant's conviction for unlawful possession of marijuana and otherwise affirm.

The pertinent facts are undisputed. During a June 26, 2011, traffic stop, Beaverton Police Officer McNair asked defendant for his driver's license, registration, and proof of insurance. Defendant gave McNair a paper copy of an expired State of Washington temporary driver's license, which the officer described at trial:

"[McNAIR]:   He eventually pulled out a piece of paper which ended up being an expired temporary Washington permit. It was expired, you know, over—at least a month prior to the date of the stop. It was a—a very worn—it had wear marks all through the picture, and that was the only thing he presented.

"[PROSECUTOR]:   Okay. So, the license was not valid on June 26th, 2011?

"[McNAIR]:   No. The card that he presented me had expired in May."

McNair arrested defendant for failure to present a driver's license and took him into custody. McNair searched defendant's person, purportedly incident to the arrest, and found a small bag of marijuana in defendant's pocket along with "an actual hard copy of a Washington license that was also expired, that had been hole-punched." McNair cited defendant for failure to carry or present a license under ORS 807.570 and for possession of less than an ounce of marijuana under ORS 475.864.

Defendant, who appeared *pro se*, moved before trial to suppress the evidence from McNair's search, arguing that he had been unlawfully searched under both the state and federal constitutions. The trial court denied defendant's motion, finding that McNair properly searched defendant incident to arrest.

At trial, the state called McNair as its only witness, and he testified as described above. Defendant also presented a case, which was primarily directed to the defense that is described in ORS 807.570(3). That is, defendant attempted to establish that he had been a validly licensed driver on the date of the traffic stop even though he had not presented a license during the stop.[1] Defendant testified that he had applied for a Washington driver's license and was issued a series of temporary licenses, evidently as proof of licensure while the permanent "hard copy" of the license was being processed and mailed to defendant. He went on to explain that he had multiple temporary licenses because he had not received the permanent license as expected (defendant speculated that it had been lost in the mail or stolen

---

[1] Under ORS 807.570, a person commits the offense of "failure to carry a license or to present a license to a police officer" when that person does not "present and deliver such license or permit to a police officer when requested by the police officer *** [u]pon being lawfully stopped or detained when driving a vehicle." ORS 807.570 also establishes a defense to that crime, providing that "it is a defense to any charge under this section that the person so charged produce a license, driver permit or out-of-state license that had been issued to the person and was valid at the time of violation of this section." ORS 807.570(3).

Although both defendant and the state characterize that defense as an affirmative defense, it is not. Rather, it is an ordinary defense that the state had the burden of disproving beyond a reasonable doubt once defendant raised it. *State v. Timmermann*, 220 Or App 458, 468, 187 P3d 744 (2008). However, defendant did not argue at trial and has not argued on appeal that the state did not meet its burden of disproving the ORS 807.570(3) defense, so we do not address that point further.

from his mailbox) and had needed to request a new copy of his license on several occasions.

Defendant introduced five Washington driver's licenses into evidence, including three expired temporary licenses, the expired, hole-punched license that he had moved to suppress at trial, and a nonexpired, permanent "hard copy" license that was valid on the date of trial. Each temporary license listed the dates on which it was issued and expired, along with the license expiration date. Defendant asserted that he had "been a licensed driver during the entire thing," pointing out that even though the three temporary licenses and the nonexpired, permanent license had different issue dates, they all shared the same license expiration date in May 2015. Defendant's argument appears to have been that the shared 2015 expiration date confirmed that he was validly licensed to drive on the date of the stop, even if the temporary license was expired. However, defendant was not able to produce a permanent or temporary license that had been valid on the date of the stop; the permanent license was issued after the stop and the three temporary licenses either expired before the stop or were issued after the stop.

In closing argument, the state emphasized that it had proven that defendant had failed to present a valid license to McNair during the traffic stop and asserted that defendant had "failed to show at any time, including today, that he had a valid license on" June 26, 2011. In defendant's closing argument, he again directed the jury to the defense in ORS 807.570(3) and argued that he had been licensed to drive at the time of the stop and that he merely had not received his current license in the mail. The jury found defendant guilty of the license offense and the court found defendant guilty of unlawful possession of marijuana.

In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress. Defendant argues, and the state concedes, that McNair's search of defendant's pockets, purportedly as incident to defendant's arrest, was unlawful under Article I, section 9, of the Oregon Constitution. For the reasons that follow, we accept the state's concession.

"Under Article I, section 9, there are three valid justifications for a search incident to lawful arrest: to protect the officer's safety, to prevent the destruction of evidence, and to discover evidence relevant to the crime for which the defendant was arrested." *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994). However, a search incident to arrest for failure to display a driver's license ordinarily "is limited to a search for weapons, because there is no reason to search an individual for evidence of that crime, which is complete upon noncompliance." *State v. Bishop*, 157 Or App 33, 43 n 4, 967 P2d 1241 (1998). Moreover, the permissible scope of that search for weapons is limited by "the facts surrounding the arrest." *Hoskinson*, 320 Or at 87. Although a "patdown or limited search for weapons to protect the officer or to prevent escape" is "justified whenever a person is taken into custody," *State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986), a more intrusive search—like McNair's search of defendant's pocket—is justified only if the officer develops "reasonable suspicion, based on specific and articulable facts, that the person in custody poses a serious threat of harm or escape and that a search would lessen or eliminate that threat," *Hoskinson*, 320 Or at 87. Here, the state concedes that the record includes no evidence that McNair's search of defendant's pocket was justified by reasonable suspicion that defendant posed a safety or escape risk. We agree; the record does not reflect that McNair articulated any such suspicion. Accordingly, the trial court erred when it denied defendant's motion to suppress the marijuana and the expired license that McNair found in defendant's pocket.

The state also concedes that the trial court's error requires reversal of defendant's conviction for unlawful possession of marijuana because "[h]ad the marijuana evidence been suppressed, the state obviously would not have been able to prove the possession charge." We agree and therefore reverse defendant's conviction for unlawful possession of marijuana.

Defendant and the state part ways, however, with respect to whether the trial court's error in denying defendant's suppression motion—and the subsequent admission into evidence of the expired license that defendant sought to suppress—also requires us to reverse his conviction for

failure to carry or present a license. Defendant contends that it does; the state disagrees, arguing that the error was harmless with respect to the license conviction.

The "harmless error" principle requires us to affirm defendant's conviction, notwithstanding the erroneous denial of his suppression motion, if there was "little likelihood" that the error affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). To determine whether a trial court's error was harmless, we examine the record as a whole and consider the error and the context in which it occurred. *State v. Kayfes*, 213 Or App 543, 555, 162 P3d 308, *rev den*, 343 Or 690 (2007). The erroneous exclusion or admission of evidence is harmless "if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict," *Davis*, 336 Or at 32, or if the jury "would have regarded the * * * evidence as duplicative or unhelpful to its deliberations," *id.* at 33.

In arguing that the failure-to-present conviction should be reversed, defendant contends that admission of the expired driver's license may have affected the jury's consideration of whether defendant in fact "had a license that was valid on June 26, 2011," *i.e.*, whether the evidence established the ORS 807.570(3) defense. In response, the state argues that the properly admitted evidence of the expired temporary license that defendant showed to McNair "had essentially the same undermining force that the improperly admitted evidence of the additional expired license (the one found in defendant's pocket) had on defendant's effort to prove he had a valid license." For that reason, the state concludes, "there is little likelihood that the improperly admitted evidence affected the jury's verdict."

Viewing the record as a whole, we conclude that the trial court's error in denying defendant's suppression motion was harmless with respect to the conviction for failure to present or carry a license. A person commits that offense if the person "[d]oes not present and deliver such license or permit to a police officer when requested by the police officer * * * [u]pon being lawfully stopped or detained when driving a vehicle." ORS 807.570. After McNair lawfully stopped defendant for a violation, defendant did "not

present and deliver [a valid] license or permit to" McNair when requested. Instead, he presented an expired temporary license. Defendant's crime was complete at that time. We do not perceive how evidence that defendant possessed *another* expired license would have affected the jury's determination of whether defendant had presented a valid license when he was asked to do so. Rather, the jury likely would have regarded the evidence as "duplicative or unhelpful to its deliberations." *Davis*, 336 Or at 33. Accordingly, we conclude that the trial court's error in denying the motion to suppress the expired hole-punched license was harmless with respect to that aspect of the state's case.

That conclusion does not end our analysis, however. Again, a defense to the charge of failing to present a valid license exists when the defendant later "produce[s] a license, driver permit or out-of-state license that had been issued to the person and was valid at the time of violation of this section." ORS 807.570(3). Defendant contends that admission of the expired license undermined that defense because it "cast a cloud of doubt on his attempts at trial to prove the status of his license via evidence of a driving record abstract and various temporary and permanent licenses."

We are not persuaded by defendant's argument. Preliminarily, we question whether defendant was prejudiced by the trial court's denial of his motion to exclude the expired, hole-punched license, given that—after the officer testified at trial about finding that license during the search—defendant himself offered the license as an exhibit. Even leaving that question aside, however, we consider it highly unlikely that evidence that defendant possessed the expired license at the time of the stop (no matter who offered the evidence) influenced the jury's consideration of the statutory defense. In association with that defense, defendant also introduced into evidence three *other* expired, temporary licenses and his nonexpired, permanent driver's license that was valid on the date of trial. In an attempt to explain the significance of those documents, defendant testified that his license had been suspended in June 2010 for failure to pay tickets, he subsequently paid those tickets, and the State of Washington issued him a temporary license while he waited for the permanent "hard copy" to arrive in the mail. That

temporary license is what defendant showed to McNair on June 26, 2011. As discussed above, 262 Or App at 303, defendant testified that the permanent license never arrived, and he requested a new permanent license on multiple occasions and was issued a series of additional temporary licenses, all of which showed a license expiration date in 2015.

Thus, defendant acknowledged that he had not possessed a valid *permanent* license at the time of the stop and had relied—both before and after the stop—on temporary short-term licenses while awaiting a permanent license. Defendant's possession of an old license that had expired before he received his first temporary license has no relevance to whether, in fact, defendant's driving privileges had been renewed after the June 2010 suspension and whether he was a validly licensed driver when he was stopped a year later. Moreover, to the extent that the jury could have drawn adverse inferences from defendant's possession of an expired license (one that presumably could not have passed as a current license, given that it had been hole-punched), the same inferences could be drawn from defendant's possession of the other temporary licenses that he introduced into evidence himself. Accordingly, we conclude that the trial court's erroneous denial of the suppression motion, and resulting admission of the hole-punched license into evidence, is not likely to have affected the verdict.

We turn to defendant's contention that the trial court erred in granting the state's pretrial motion to exclude an exhibit that defendant claimed was a printout from the website of the Washington State Department of Licensing. Defendant asserts that the excluded printout states that defendant had a valid driver's license on June 26, 2011, and, therefore, was directly related to the defense described in ORS 807.570(3).[2]

The state's motion to exclude the printout was based on a contention that defendant had not adequately authenticated the document as required by OEC 901. Specifically,

_____

[2] The state does not argue either (1) that a judicial view of the website during the motion hearing would not have sufficiently authenticated the printout or (2) that the information on the printout (if so authenticated) would not have been sufficient to establish the ORS 807.570(3) defense. We express no opinion on either point.

the state argued that defendant had not authenticated the document as a "public record, report, statement, or data compilation" because he had offered no evidence that the document was "from the public office where items of this nature are kept." OEC 901(2)(g).[3] The state also suggested that the printout was not self-authenticating under OEC 902(1)(b) because "there's no seal or any other indication on the printout that it is a valid representation of any public record."[4] Finally, the state generally characterized the printout as "decidedly suspect * * * concerning its authenticity, because there is no indication that it's from any reliable source."

In response to the state's argument, defendant asserted that the printout was genuine:

"[DEFENDANT]: Your Honor, if you go to the Department of Licensing for Washington State anytime now or in the past, and print out—you type in your driver's license, and it prints out that exact copy. And so I did go to the Department of Licensing in Washington yesterday, and did get a true copy of my driver record. But there is no other thing that they would offer me, other than they told me to go ahead and print it out from—from their website.

"So, the printout that I have, if you were to go today, put in my driver's license and print it out, it is from an official, and you would see that there's, you know, no fraud involved or anything. It's an exact copy of what comes off the Department of Licensing website."

After hearing both sides' arguments, the trial court ruled that defendant had not authenticated the printout and, therefore, excluded it from evidence.

On appeal, defendant contends that the trial court erred in excluding the printout because defendant provided

---

[3] Under OEC 901(2)(g), documents may be authenticated through "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

[4] Under OEC 902(1)(b), extrinsic evidence of authenticity is not required for a document "purporting to bear the signature, in an official capacity, of an officer or employee of [certain governments], having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine."

sufficient authentication in two ways. First, defendant argues, he authenticated the document by "inviting the trial court to view the website and verify that the printout accurately represented the information contained therein." The state does not argue that defendant could not have authenticated the printout by having the trial court view the website, but instead argues that defendant never asked the court to do so.

We conclude that the trial court did not err by not interpreting defendant's statement as a request that the court take further steps in association with defendant's attempt to authenticate the printout. Again, defendant stated, "So, the printout that I have, if you were to go today, put in my driver's license and print it out, it is from an official, and you would see that there's, you know, no fraud involved or anything." We acknowledge that some judges might have interpreted defendant's statement as an invitation to go onto the Internet to validate the printout's authenticity. Indeed, in considering this kind of *pro se* response to a pretrial motion to exclude evidence for lack of authentication, some judges might have been inclined to further explore the intent behind a defendant's somewhat ambiguous suggestion that "if you" entered the license information, "you would see" that the printout is accurate. Perhaps such a judicial inquiry in this case would have revealed that defendant wanted the judge to go onto the Internet, visit a particular website, and enter defendant's information to determine the authenticity of the document that defendant claimed was a printout from that website.

Nonetheless, we cannot say that this judge committed reversible error by not interpreting defendant's statement as a request that the judge take those actions. First, defendant's use of the word "you" in the sentences quoted above could easily be understood as a colloquial reference to people generally, not to the trial judge specifically. In other words, a reasonable judge could have understood defendant to be asserting, essentially, that "if one went to the website, one would find this information." Second, defendant's statement was phrased as just that—an assertion of fact—not as a request that the judge take any particular action. That is, defendant's statement could reasonably be interpreted

as explaining why he considered the document to be appropriate evidence (because it was "from an official"), but not actually asking the trial judge to visit the website himself to confirm the printout's authenticity. Because we cannot say that every reasonable judge would have understood defendant's statement as requesting that the judge visit the website in question, we reject defendant's contention that he adequately authenticated the document by making such a request.

Defendant also contends that he attempted to authenticate the printout a second time, during his case-in-chief, when he called a witness who had been in the car with defendant during the traffic stop and subsequent arrest. The witness testified that she had also been present when defendant later looked at the Washington State Department of Licensing's website and printed out the document that he attempted to introduce at trial. The witness asserted that she had a copy of the printout with her, and defendant asked her to explain what it was. The prosecutor objected, and the court reminded defendant that the document had been excluded from evidence. Nonetheless, defendant persisted in his efforts to get the witness to describe the information that she and defendant purportedly had obtained from the website:

"[DEFENDANT]:  * * * On the night of this traffic stop, 15 minutes after we were pulled over and released, what did we go do?

"[WITNESS]:  We went back to my house, and got on the Internet to the Department of Licensing, and printed up—

"* * * * *

"[WITNESS]:  We printed up from the Department of Licensing in Washington, that you had a driver's license at the time that you were stopped.

"[PROSECUTOR]:  Objection, Judge.

"THE COURT:  Sustained.

"[PROSECUTOR]:  Move to Strike, ask the jury to disregard that testimony, please.

"THE COURT: I'm going to do that. It was permissible for the witness to say that they had printed out some sort of document. What the document says in the opinion of the witness is not something you can consider, so what you heard must be not considered when you deliberate, and find a verdict today. That's excluded from evidence. * * *

"[DEFENDANT]: Was it your understanding that my license was valid that day?

"[WITNESS]: Yes.

"[PROSECUTOR]: Objection, Judge. He's already— he's referring to knowledge acquired from an outside source that's not present in this courtroom to be cross-examined.

"THE COURT: Sustained. Once again, that testimony is excluded from your consideration.

"[DEFENDANT]: Would you consider a State Department-run website accessed by a public person to be valid information?

"[WITNESS]: Yes.

"[DEFENDANT]: Did you print out a report that evening of the status of my license?

"[WITNESS]: Yes.

"[DEFENDANT]: What was that status?

"[PROSECUTOR]: Objection.

"THE COURT: That's it right there. That's where it stops. That's the hearsay rule."

On appeal, defendant argues that the above exchange shows that he had attempted to authenticate the printout by "offering the testimony of a witness who had personally viewed the website at the time that the document was printed."[5] The state does not argue that the witness's testimony would have been insufficient to authenticate the printout; instead, it contends that defendant did not actually try to authenticate the printout with the witness's testimony: "Nor did defendant seek to authenticate the printout and offer it as documentary evidence through [the witness's]

_____

[5] Defendant does not argue that his *own* statements about his viewing of the website and printing of its contents served to authenticate the printout, and we express no opinion on that point.

testimony \* \* \*. What he sought from [the witness] was testimony about the content of the printout[.]"

We agree that the trial court did not err by not interpreting defendant's examination of the witness as an attempt to authenticate the printout. By the time defendant's witness testified at trial, the trial court had already granted the state's pretrial motion to exclude that document. Then, during the exchange partly quoted above, defendant responded, "Oh, absolutely," when the court reminded him that the printout had been excluded from evidence. Defendant never asked the court to reconsider its decision to exclude the printout itself; nor did he explain that he was offering the witness's testimony to authenticate the printout. Instead, defendant offered the testimony as substantive evidence of the *content* of the website or printout and, hence, the status of his driver's license at the time of the stop. The trial court excluded that testimony on the ground that it was inadmissible hearsay, and defendant does not challenge that ruling on appeal. Having understood and excluded the proffered testimony as hearsay, the trial court was not required, *sua sponte*, to also reconsider the issue of authentication and decide whether the witness's testimony might serve to authenticate the previously excluded document.

Conviction for unlawful possession of marijuana reversed; otherwise affirmed.