680 March 11, 2026 No. 188

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROCKEY LYNN MARTIN,
*Defendant-Appellant.*

Lane County Circuit Court
23CR42634; A183969

Stephen W. Morgan, Judge.

Submitted December 8, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniel, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÀN, J.**

After a jury trial, defendant was found guilty of two counts of felon in possession of a restricted weapon (brass knuckles), ORS 166.270(2). The trial court merged the two guilty verdicts into a single conviction. On appeal from the judgment of conviction, defendant challenges the trial court's denial of his motion to suppress evidence obtained during a lawful stop of his vehicle for a traffic infraction and the subsequent search of the vehicle. Defendant contends that after probable cause for the stop dissipated, the officer unlawfully extended the stop in violation of the Oregon Constitution, Article I, section 9.[1] We conclude that the trial court did not err in denying defendant's motion to suppress and therefore affirm defendant's conviction.

The trial court found that Officer Peckels stopped defendant's vehicle after noticing that it did not have a license plate and that the temporary trip permit, which was taped to the lower left-hand side of the rear window, was wrinkled and stained, with a corner torn and turned over. The permit number was illegible to Peckels when he initiated the stop. Peckels recognized defendant's vehicle as a car that "stayed at a frequent known narcotics house."

The trial court found that, as Peckels got out of his marked patrol car and approached defendant's vehicle, the number on the permit became visible to him but that the expiration date of the permit remained illegible, because it was located on the corner of the permit that was torn and folded.

As he approached the driver's side of the vehicle, Peckels recognized defendant, the driver, as someone with whom he had had previous contact and who he knew had a suspended license[2] and several felony arrests. Peckels asked defendant why he was driving and asked defendant for his identification. During that conversation, Peckels saw

---

[1] Article I, section 9 provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

[2] Defendant was also charged with and acquitted of a third count for possession of a knife with a spring-assisted blade. Defendant was not charged with any offense related to the license suspension.

in plain view the grip of a gun on the floorboard of the front seat.

Because he was aware that defendant had had felony arrests, Peckels believed it likely that defendant had a felony conviction and that he was not permitted to have a gun. After seeing the gun grip, Peckels ordered defendant to place his hands on the wheel where he could see them and to remain in the car while he called for backup. When backup arrived, Peckels removed defendant from the car and secured the gun. As he was removing the gun, which proved to be a pellet gun, Peckels spotted two pairs of brass knuckles lying next to the gun.

Defendant was charged with two counts of felon in possession of a restricted weapon relating to the brass knuckles. He filed a motion to suppress, contending that the statutes relating to the display of temporary trip permits require only that the permit be "visible" and available for inspection; and that when the permit became visible to Peckels as he approached the vehicle, there was no basis for a stop beyond simply investigating the validity of the permit and issuing a citation if necessary; and that the evidence of the knuckles should be suppressed.

The state responded that Peckels had probable cause to stop defendant based on a violation of ORS 804.655 ("A person commits the offense of improper display of a permit if the person is issued a permit under ORS 803.600, 803.615 or 803.625, and the person does not display the permit on the vehicle in the manner required by ORS 803.650 or as required by the Department of Transportation by rule.").[3]

---

[3] Under ORS 803.650(1), a trip permit issued under ORS 803.600 and a temporary permit issued under ORS 803.615 and ORS 803.625 must be placed on the left side of the rear window of a vehicle, unless (1) the vehicle has no rear window or (2) the vehicle's design or any equipment lawfully added to the vehicle makes it so the permit cannot "easily be seen from outside the vehicle." ORS 803.650(1)(a), (b).

ORS 803.650(2) directs the Oregon Department of Transportation (ODOT) to adopt rules for the placement of permits that cannot be placed on the left side of the rear window of a vehicle. OAR 735-032-0030 provides, in relevant part:

"(1) Temporary registration permits issued under ORS 803.625 must be readable from the outside of the vehicle. ORS 803.660 requires that "[t]he color and size of the print on permits issued under ORS 803.600, 803.615 and 803.625 shall be such that the permits can easily be read.""

The trial court agreed with the state and denied defendant's motion, explaining that what needs to be "visible" on a permit is not just the existence of a permit paper but "all the relevant information that's on that permit." The trial court cited *State v. Ankeny*, 306 Or App 300, 310, 474 P3d 406 (2020), in which we held that a temporary permit must not merely be "visible"—it must be "readable." The trial court ruled, based on Peckels' inability to read the relevant information on the permit, including the permit's expiration date, that the officer had probable cause for the traffic stop which, the court held, evolved into probable cause that defendant's license was suspended and that defendant was a felon in possession of a restricted weapon.[4]

On appeal, defendant does not dispute that the officer had probable cause to initiate a stop for the traffic violation of failing to display a legible permit. He contends, however, citing *State v. Arreola-Botello*, 365 Or 695, 701-02, 451 P3d 939 (2019), that Peckels' probable cause was limited to the traffic violation of failing to display a legible permit, and that that probable cause dissipated after Peckels was able to read the number on the permit.

Defendant acknowledges the trial court's finding that the permit, including the expiration date, was not fully legible to Peckels. But citing *Ankeny*, in which we held that the primary purpose of the permit display requirement is to ensure that law enforcement personnel are easily able to determine whether a temporary permit is valid, 306 Or App at 311, he argues that the officer need only be able to read the number on the permit and then conduct an investigation to determine whether the permit is valid. Defendant contends that the trial court erred in determining that the officer must be able to read the expiration date.

We conclude that the trial court correctly concluded that the expiration date on the permit is part of the information that must be visible and legible to law enforcement

---

[4] The trial court described what it considered to be "evolving" probable cause—

"[T]he facts of this case, as the court finds the facts, is that this officer, once he gets to the defendant, gets to somewhat of an escalating probable cause. *** [W]hen he sees who the defendant is, he knows the defendant is suspended. When he starts to talk to the defendant he sees the gun on the floor."

personnel. An expired permit is not a "valid" permit. *Cf. State v. Durando*, 262 Or App 299, 306, 323 P3d 985 (2014) (an expired license is not a valid license for purposes of the violation of failure to present a driver's license to a police officer under ORS 807.570(3)). The expiration date of a permit is part of the information that allows the law enforcement officer to determine that the permit is valid.[5] Thus, we agree with the trial court that Peckels' subjective belief that defendant had committed a traffic infraction due to the lack of visibility of the expiration date was objectively reasonable. *See State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009) (Under Article I, section 9, of the Oregon Constitution, to support probable cause to justify a traffic stop, at the time of the stop, the officer must subjectively believe that a violation has occurred, and that belief must be objectively reasonable. (Citing *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986))).

Defendant contends that, rather than simply investigating whether the permit was valid by calling in its number to dispatch and issuing a citation if one was called for, Peckels unlawfully extended the stop when he chose instead to approach the driver and initiate a conversation, which caused him to see the gun handle protruding from under the front seat. Defendant did not preserve below his argument that Peckels unlawfully extended the stop; thus we decline to address it.[6] Defendant also did not preserve below the arguments that he makes on appeal that Peckels lacked reasonable suspicion to believe that defendant had committed the offense of felon in possession of a firearm or lacked an officer-safety basis to search defendant's vehicle for weapons, and we therefore decline to address those contentions.

---

[5] We note that OAR 735-032-0030(1) (Aug 26, 2008), which was in effect when defendant was stopped, provides that the entire temporary registration permit must be "readable from the outside of the vehicle."

[6] Assuming that defendant's extension argument was preserved, we would reject it. Having lawfully stopped defendant's vehicle based on the illegible permit, Peckels would not have extended the stop by approaching the driver to tell the driver the reason for the stop and to request identification. Additionally, having recognized defendant has someone whose driver's license was suspended, Peckels had probable cause to stop defendant for driving while suspended and to inquire as to that violation, which he did. Thus, there was no unlawful extension of the stop in conversing with defendant about that violation and asking defendant for his identification.

For the above reasons, we affirm the trial court's denial of defendant's motion to suppress and affirm defendant's conviction.

Affirmed.